[Crim. No. 8044.   Second Dist., Div. One.   Nov. 9, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN G. OPPEN-
HEIMER, Defendant and Appellant.

414

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney (Los Angeles), Harry Wood and Harry Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

John G. Oppenheimer, in pro. per., for Defendant and Appellant.

FOURT, J.—This is an appeal by the plaintiff from an order setting aside an indictment following a motion made by the defendant under the provisions of section 995, Penal Code. The defendant filed a cross-appeal from the order of the court "insofar as it limits the dismissal of the case to the provisions of section 995. . . ."

In an indictment filed in Los Angeles County on July 19, 1961, the appellant was charged in four counts with violating the provisions of section 523 of the Penal Code.[1]

The first count of the indictment set forth that the defendant did on January 27, 1961, ". . . feloniously, with the intent to extort money and property from Frank G. Swain,

---

[1] § 523. *Threatening letters; intent; punishment*

"SENDING THREATENING LETTERS WITH INTENT TO EXTORT MONEY, ETC. Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in section [519] is punishable in the same manner as if such money or property were actually obtained by means of such threat."

§ 519. *Fear used to extort; threats inducing*

"Fear, such as will constitute extortion, may be induced by a threat, either:

"1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,

"2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,

"3. To expose, or to impute to him or them any deformity, disgrace or crime; or,

"4. To expose any secret affecting him or them."

send and deliver to said Frank G. Swain a certain letter and writing, which said letter and writing did then and there express and imply and was adapted to imply a threat to do an unlawful injury to the person and property of the said Frank G. Swain.''

The second, third and fourth counts of the indictment were in identical form with reference to letters written to A. Curtis Smith, Harold P. Huls and Harold C. Shepherd, respectively.

The defendant was arraigned on July 21, 1961. On August 4, 1961, a petition for a writ of habeas corpus was denied. Defendant entered ''pleas of once in jeopardy and former conviction.'' On August 17, 1961, before Judge Coleman, the defendant's motion under section 995, Penal Code, was heard and denied. A demurrer was overruled. Defendant pleaded not guilty, ''Former judgment of conviction and acquittal . . . Once in jeopardy . . . Not Guilty by Reason of Insanity.''

The defendant filed an affidavit of prejudice and the cause was transferred back to department 100 for resetting for trial and other matters. In another department (113) of the court, on September 1, 1961, the defendant's plea of double jeopardy and ''former conviction'' was argued and denied. After various and sundry appearances and motions the cause was assigned to the court of Judge Gitelson on September 19, 1961, for trial on September 21, 1961. The defendant on September 21, 1961, sought a continuance upon the ground that he had petitioned the District Court of Appeal for a writ of prohibition. That petition was filed in the District Court of Appeal on August 30, 1961, and set forth, among other things, that the superior court had on August 17, 1961, improperly denied his motion under section 995, Penal Code. Furthermore in that petition defendant set forth practically all of the matters which he has set forth in this appeal, namely, among others, that the indictment was void, stale, prior jeopardy, res judicata and many other reasons why the proceedings should be stopped. That petition was denied by Division 3 of the District Court of Appeal on September 11, 1961. The trial judge continued the case to October 16, 1961, for trial upon motion of the defendant.

Judge A. Curtis Smith planned to be away from the County of Los Angeles on the date to which the case was continued for trial and it was stipulated that his deposition could be taken on September 22, 1961.

On September 25, 1961, the defendant made an application

to the Supreme Court for a hearing of the prohibition proceedings. Defendant set forth in that application what had occurred in the District Court of Appeal and further set forth that the indictment "lacks probable cause," that "the evidence before the grand jury fails to show the existence of reasonable or probable cause that section 523, Penal Code has been violated by petitioner, as charged, or anyone, for that matter, either in January, 1961 or at any other time" and further he set forth practically all of the matters presently urged in this proceeding. That petition for a writ of prohibition was unanimously denied by the Supreme Court on October 11, 1961.

The deposition of Judge A. Curtis Smith was taken on September 22, 1961. The trial of the case was continued to October 19, 1961. On October 19, 1961, the defendant's renewed motion under section 995, Penal Code, was heard and order submitted. On October 30, 1961, Judge Gitelson made an order, which stated in part as follows:

". . . there is no probable cause to believe that a crime is thereby charged; therefore, the motion under 995 solely and only, however, upon the ground that defendant has been indicted without reasonable or probable cause, is granted."

The People appealed, as heretofore indicated, and defendant filed a cross-appeal.

Judges Frank Swain, Harold Huls and A. Curtis Smith presently and on the dates in question composed the appellate department of the Superior Court in and for Los Angeles County. Apparently the defendant and R. W. Agnew have had some difficulty in the past. In any event the defendant here (prior to the writing of the letters) was a complainant in a criminal case filed in the municipal court (Los Angeles) against R. W. Agnew (case No. 124,429) wherein Agnew was charged with battery. That cause was dismissed because, among other things, the complaining witness (Oppenheimer) did not appear, and was dismissed upon the court's own motion in the interest of justice, in that the evidence did not support the allegations of the complaint. Judge Harold C. Shepherd presided in that case. A purported notice of appeal was filed on September 12, 1960, in that case by Oppenheimer, the complainant therein. The notice read in part "Notice of appeal filed by John G. Oppenheimer, complainant, agent and attorney in fact for plaintiff."

A complaint in two counts was filed (prior to the writing of the letters) against Oppenheimer in the municipal court

(Los Angeles) charging him with battery (case No. 124,358). The alleged victim in that case was R. W. Agnew. In a jury trial in the court of Judge Shepherd, Oppenheimer was found guilty of one count of the charge in the complaint and was sentenced to pay a fine of $100 with a $5.00 penalty assessment. The fine apparently was paid.

On November 23, 1960, the three judges of the appellate department of the superior court issued an order to show cause why Oppenheimer should not be adjudged guilty of contempt, in that he was practicing law without a license and attempting to represent the People of the State of California in the purported appeal from the judgment in the case, wherein he was the complainant (*People* v. *Agnew,* No. 124,429). Oppenheimer was found guilty of contempt on December 8, 1960 (in the appellate department of the superior court), and was sentenced to five days in jail and to pay a fine of $250 plus a penalty assessment of $12.50. Oppenheimer served the five days and paid the fine and assessment.

During the month of December 1960 Oppenheimer had a conversation with an attorney in which the attorney stated in effect, "John, I understand they nabbed you this time" and Oppenheimer turned red and answered in effect that he was going "to get even with those goddamn judges." The attorney thus spoken to urged caution and Oppenheimer reiterated his statements and further said that he was going to put sugar in the gasoline tanks of the respective judges.

On January 27, 1961, Judges Swain and Smith each received a letter in the mail. On January 28, 1961, Judge Huls and Judge Shepherd each received a letter in the mail. Copies of the respective letters and the envelopes in which they were sent are set forth in footnote 2.

---

[2] *Envelope:*

Law Offices

OPPENHEIMER & DAVIS                      (Cancellation stamp)

        Frank G. Swain
        Tyrant and Fascist
        1008 Worshim Drive
        Whittier, Calif.

*Letter:*

        JOHN OPPENHEIMER
        Attorney at Law

                      Jan. 27, '61

Devil
Frank G. Swain, Gangster, Bandit, Crook, Nazi,
Tyrant and Fascist, Dirty Rat and Asshole
1008
Whittier, Calif.

On January 31, 1961, Judge Shepherd found an empty envelope which was directly linked to Oppenheimer in the tube leading to the gas tank of his automobile. On March 4, 1961, the judge's car was found to contain sugar in the fuel pump, gas tank, carburetor and other parts thereof.

On March 25, 1961, an envelope which was definitely linked to Oppenheimer, containing sugar, was found in the gas tank of the automobile of Judge Swain.

The police located a typewriter in Oppenheimer's room. It was the opinion of an expert that the letters heretofore referred to and mentioned were written upon the particular typewriter so found and taken. There was other evidence without relating the same which definitely connected Oppenheimer with the writing of the letters in question.

The trial judge apparently was of the belief that the letters

### STATEMENT

| | | |
|---|---|---|
| 1. | Kidnaping and Violation of Constitutional and Civil Rights | $4500.00 |
| 2. | Illegal Ransom Collected | 250.00 |
| 3. | Additional Lawless Extortion Exacted, without authority (Blackmail) | 12.50 |
| | TOTAL Debt | $4762.50 |

REMIT FORTHWITH, you fiend and un-American bastard, felon and scoundrel particularly Items 3 and 2, or be sued.

IT WILL COST YOU MORE NOT TO PAY.

AND BE DAMNED, CONDEMNED AND CURSED, FOREVER, OR UNTIL PAYMENT AND SATISFACTION IS GIVEN, AND MADE.

— — — — —

Are all windows insured?

*Envelope*:

Law Offices
OPPENHEIMER & DAVIS                    (Cancellation stamp)

A. Curtis Smith
Fascist and Tyrant
211 North Elm Drive
Beverly Hills, Calif.

*Letter*:

JOHN OPPENHEIMER
Attorney at Law

1/27/61

A. Curtis Smith, Asshole, Dirty Rat, Devil, S.O.B., Bastard, Prick, Bandit, Gangster, Tyrant, Nazi, Fascist, Criminal, Scoundrel, Crook, Fiend and Un-American Dictator
211 North Elm Drive
Beverly Hills, Calif.

were nothing more than the writing of an insane person, that it was in each instance simply the writing of a dissatisfied litigant who wanted to give vent to his feelings about the decisions of the respective judges, that the writer of the letters did not in fact actually demand or seek any money. The court further seemed to be of the belief that if a writing such as any of the letters under consideration was capable of two constructions, one whereby the defendant would be guilty of an offense and one whereby the defendant would be innocent of an offense, then and in such event the court as a matter of law was required to hold that no crime could have been committed because the court must take the construction pointing to innocence. The judge further seemed to feel that the language of the letters, taken on context with the foul and abusive terms therein contained, and the facts and circumstances surrounding the entire matter, is not sufficient to warrant further pro-

STATEMENT

| | | |
|---|---|---|
| 1. | Kidnaping and Violation of Const. and Civil Rights | $4500.00 |
| 2. | Illegal Ransom Collected | 250.00 |
| 3. | Additional Unauthorized and Lawless Extortion and Blackmail | 12.50 |
| | TOTAL Debt | $4762.50 |

PAY FORTHWITH, PARTICULARLY ITEMS 3 and 2, or be dealt with according to law.

IT WILL COST YOU MORE NOT TO PAY.

AND BE FOREVER DAMNED, CURSED AND CONDEMNED, OR UNTIL PAYMENT AND SATISFACTION IS MADE AND GIVEN.

— — —

Are all windows insured?

*Envelope*:

Law Offices
OPPENHEIMER & DAVIS                    (Cancellation stamp)

Harold P. Huls
Fascist and Tyrant
650 Westbridge Place
Pasadena, Calif.

*Letter*:

JOHN OPPENHEIMER
Attorney at Law

Jan. 27, 1961

Devil

Harold P. Huls, Bandit, Gangster, Crook, Nazi, Crook, Fascist and Tyrant, Felon and Scoundrel
Pasadena, Calif.

ceedings. The judge stated in effect that the reference by Oppenheimer as to whether the windows of the respective judges were insured was a simply inquiry comparable to any other simple and unrelated question which might have been put to the respective judges at that time and carried with it no connotation whatsoever of a threat nor were such words adapted to imply a threat. The trial judge further seemingly was impressed by the fact that the value of any windows which might have been broken was not set forth in the indictment and further that it was not set forth in the indictment whether the respective judges involved had, owned, or possessed any windows. Oppenheimer was thereupon discharged.

---

STATEMENT

| | | |
|---|---|---:|
| 1. | Kidnaping and Violation of Constit. and Civ. Rts. | $4500.00 |
| 2. | Illegal Ransom Collected | 250.00 |
| 3. | Additional Lawless and Unauthorized Extortion and Blackmail | 12.50 |
| | TOTAL Debt | $4762.50 |

Remit at once, you fiend and Un-American bastard, particularly items 3 and 2, or be sued. You are a dirty rat and an asshole.

IT WILL COST YOU MORE, NOT TO PAY.

AND BE CURSED, DAMNED AND CONDEMNED, FOREVER, OR UNTIL PAYMENT AND SATISFACTION IS GIVEN, AND MADE.

* * *

Are all windows insured?

*Envelope*:
Law Offices
OPPENHEIMER & FINN                    (Cancellation stamp)
John Oppenheimer
George Finn
Charles Finn
          Harold C. Shepherd
          Fascist, Nazi and Tyrant
          2035 Kenilworth
          Los Angeles, Calif.

*Letter*:
          GEORGE FINN, CHARLES FINN,
          JOHN OPPENHEIMER     Attys. at Law

. . . . . . . . . . . .    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TO: Dirty Bastard, Swindler, Asshole,
     Tyrant, Oppressor, Shyster,                    1/27/61
     Fascist, Nazi, Crook, Scoundrel, Gangster,
     Harold C. Shepherd, Bandit, Rat, Devil, S.O.B.
     2035 Kenilworth
     Los Angeles, Calif.

It is contended by the plaintiff, and we think correctly so, that the order dismissing the proceedings under section 995 of the Penal Code should be reversed.

In a proceeding under section 995, Penal Code, this court cannot substitute its judgment as to the weight of the evidence for that of the grand jury or committing magistrate. If there is some evidence to support the information or indictment this court will not inquire into the sufficiency thereof. (See *Perry* v. *Superior Court,* 57 Cal.2d 276, 283-286 [19 Cal. Rptr. 1, 368 P.2d 529]; *De Mond* v. *Superior Court,* 57 Cal. 2d 340, 345 [19 Cal.Rptr. 313, 368 P.2d 865].)

It is apparent that the offense involved in this particular proceeding is not of the kind which is innocent in itself and wrong only because it is prohibited by statute. To do as apparently was done in this case is vicious and involves moral turpitude and deep malignity. (*In re Coffey,* 123 Cal. 522 [56 P. 448]; *Libarian* v. *State Bar,* 38 Cal.2d 328 [239 P.2d 865].) The offense here is but shortly removed from the crime of robbery.

---

### STATEMENT

| | | |
|---|---|---:|
| Unauth. | KIDNAPING AND VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS illegally | $300.00 |
| Unauth. | RANSOM AND EXTORTION/COLLECTED (based on suppression of truth and fraud) | 105.00 |
| | TOTAL | $405.00 |

You are forbidden to practice law.
REMIT FORTHWITH OR BE SUED AND OTHERWISE
APPROPRIATELY DEALT WITH.
IT WILL COST YOU MORE NOT TO PAY, Much more.
Are all windows insured?
have
You used to be a good shepherd, but/become
a dirty dog, bastard and rat. Watch out
for the Israeli Underground secret agents;
they got Eichmann, and they'll get you, too.
Your turn will come, too, you murderer of
You are an un-American prick. /right and
Half-Witnesses before half-judge. /justice.
BE DAMNED, CONDEMNED AND CURSED, FOREVER
UNTIL AND UNLESS YOU PAY AND MAKE RESTITU-
TION AND SATISFACTION. The new German
Government has done it and is doing it.
You better do so, too, or else.
You are a kangaroo artist, a distorter and
perverter of law and justice, who rousts and
railroads *innocent victims of crimes* at the
hands of convicted and professional perjurers.

█ This was not the mere proposition by Oppenheimer that the respective judge reimburse him for the money which he had expended by way of fines and penalties. The concluding words of his letters to Judges Swain, Smith and Huls are not such as to be a simple inquiry into the status of the insurance on their respective windows. We think that the words (are all windows insured?) as used in context with the remaining parts of the letters and considering all of the other facts and circumstances could well be adapted to imply a threat to do damage to the respective judges or to their property.

An experienced extortionist does not find it necessary to designate specifically what he intends to do as a means of terrifying his prey. (*People* v. *Goldstein*, 84 Cal.App.2d 581 [191 P.2d 102].) It was appropriately stated in *People* v. *Sanders*, 188 Cal. 744, 749 [207 P. 380], that "[t]he more vague and general the terms of the accusation the better it would subserve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of failure to accomplish his extortion and of a prosecution for his attempted crime." (*People* v. *Bolanos*, 49 Cal.App.2d 308 [121 P.2d 753].)

"No precise words are necessary to convey a threat. Conduct takes its legal color and quality more or less from the circumstances surrounding it." (*Bush* v. *State*, 19 Ariz. 195 [168 P. 508, 510]. See also *People* v. *Camodeca*, 52 Cal.2d 142, 148 [338 P.2d 903] ; *People* v. *Peppercorn*, 34 Cal.App. 2d 603, 606 [94 P.2d 80].)

Threats may consist of a menace of destruction or injury to person or property. █ No precise or particular form of words is necessary in order to constitute a threat under the circumstances. Threats can be made by innuendo and the circumstances under which the threat is uttered and the relations between Oppenheimer and the respective judges may be taken into consideration in making a determination of the question involved.

It is difficult indeed to read any one of the letters in question and impute anything therefrom other than violence when such letter is considered with all of the facts involved. Oppenheimer was obviously demanding with implied menaces. It is perfectly reasonable to interpret each of the letters as implying a threat or to conclude that they were adapted to imply a threat to the receivers of such letters. Each of the letters might very well have been adapted to imply to the receiver

thereof that if the statements were not paid forthwith there could be a series of window breaking at the home or otherwise of the judge. ▮ It is not required that the prosecution set forth in the indictment the express manner in which damage to property was to be brought about. (See *People* v. *Bolanos,* 49 Cal.App.2d 308 [121 P.2d 753].)

Oppenheimer does not admit to the writing of the letters, in fact he denies that he did so; it is therefore troublesome to understand how Oppenheimer can contend with such decisiveness that the person who wrote the letters did not imply a threat nor was the language adapted to imply a threat.

▮ In *People* v. *Choynski,* 95 Cal. 640, 641-642 [30 P. 791] it is stated:

"It is not necessary that a threat should be apparent from the face of the letter, nor even necessary that it should be implied therefrom. The statute says if the language used is adapted to imply a threat, then the writing is sufficient. Parties guilty of the offense here alleged seldom possess the hardihood to speak out boldly and plainly, but deal in mysterious and ambiguous phrases,—mysterious and ambiguous to the world at large, but read in the light of surrounding circumstances by the party for whom intended, they have no uncertain meaning. In addition to matters of innuendo stated in the information, it is charged in the language of the statute that the writing was 'adapted to imply threats,' and circumstances showing its adaptation to such purpose were entirely matters of evidence."

▮ And in *People* v. *Fox,* 157 Cal.App.2d 426, 430 [321 P.2d 103] it is said:

"[2] 'It is not necessary that a threat should be apparent from the face of the letter, nor even necessary that it should be implied therefrom. The statute says that if the language used is adapted to imply a threat, then the writing is sufficient.' (*People* v. *Choynski,* 95 Cal. 640, 641-642 [30 P. 791].) [3] Furthermore it is well settled that the crime here charged '. . . depends upon the conduct and intent of the person who makes the threat, and that the effect produced upon the person against whom it is made is immaterial, so that if the . . . evidence warranted the jury in believing that the defendant intended that his threat would produce "fear" in the mind of . . . [Graffigna], and if the threat was of such character as might reasonably have that result, it would be wholly immaterial that . . . [Graffigna] was unaffected thereby.' (*People* v. *Robinson,* 130 Cal.App. 664, 668 [20 P.2d 369].)

[1b] The elements of threat and fear being questions of fact for the jury's determination, its finding in that regard will not be set aside where the evidence, as in the present case, supports its conclusion.''

Human ingenuity being what it is, there might very well be a variety of expressions which an ingenious mind could create to convey threats without using any definite phraseology. Yet such language might under certain circumstances be sufficient to impress the mind of the person threatened as to accomplish the end in view.

Each of the letters here stated, ''It will cost you more not to pay.'' Each stated, ''Are all windows insured?'' The surrounding circumstances spoken of in *People* v. *Choynski,* 95 Cal. 640 [30 P. 791], bring to life the language used. Sugar was found in the gasoline tanks of two of the judges following the receipt of the letters. In the Judge Shepherd letter Oppenheimer said, ''Remit forthwith or be sued and *otherwise appropriately dealt with.* . . . Watch out for the Israeli Underground secret agents; . . . Your turn will come, too. . . .''

With reference to the evidence involving Oppenheimer as the sender of the letters, it would seem to be clearly sufficient at this stage of the case. The letters were written on a typewriter found in Oppenheimer's room and the envelopes which contained the letters in the mail contained his name as the apparent addressor of the letters. The amounts demanded of the respective judges correspond in part to the respective fines and penalties imposed upon Oppenheimer in the various cases in which he was involved. There can be little if any doubt that it was Oppenheimer's intention to extort money from the various judges to whom he directed the letters.

With reference to Oppenheimer's cross-appeal we have read the record carefully and have found nothing to sustain or support any of his contentions. The presentation of such contentions by the appellant in his cross-appeal has not been in compliance with the rules on appeal or made in any orderly fashion, nevertheless we have considered each and every assertion of Oppenheimer and find no merit thereto.

The order dismissing the indictment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied November 26, 1962, and the petition of defendant and appellant for a hearing by the Supreme Court was denied January 3, 1963.