[Crim. No. 10358.   Second Dist., Div. Two.   June 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. EVERETT BALLARD PENISTON, Defendant and Appellant.

Gerald T. Manpearl, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Appeal from a conviction for extortion (Pen. Code, § 518) and for attempted extortion (Pen. Code, § 524).

Everett Peniston, the defendant, is a chief petty officer in the Navy. He met the complaining witness, Anne Shores, in August 1962, in a bar where she was a cocktail waitress. The following morning Peniston left on a Navy cruise. During this trip a torrid correspondence began, and Mrs. Shores sent him partially-nude photographs of herself. When he returned home, she gave him more pictures, 10 in all, and they began living together. Five weeks later they ceased living together but continued casual sexual relations until Peniston left for the Far East in February 1963. Although Mrs. Shores had a child, allegedly Peniston's, in August 1963, she began living with Mr. Shores as his wife in September 1963. When Peniston returned in November 1963, Mrs. Shores testified, "He told me he was going to buy into [a bar] and he needed [$400], and he wanted me to give it to him and if I didn't he would take the pictures to my husband and to my parents." Mrs. Shores testified she gave Peniston the money and then did not hear from him until February 1964. At that time she asked him to return the pictures. He told her he wanted $10,000 for them, but they finally agreed on a price of $1,000. On the evening of February 14 Peniston gave her the pictures, she gave him an envelope prepared by the police, and he was arrested as he stepped from the car. At the time of the arrest a friend of Peniston was parked in a nearby alley in an automobile with lights off and motor running. The friend attempted to back out of the alley but was stopped by the police.

The defense was based on the proverb "Hell hath no fury like a woman scorned." Peniston testified he stopped living with Mrs. Shores in December 1962, after she told him she had been arrested for prostitution and she had venereal disease. After he left in February 1963 she continued to write him. When he returned she constantly tried to get in touch with him but he ignored her calls and messages because he would not go out with a married woman. Peniston denied any extortion, denied he had ever asked her for money, and denied he had threatened to disclose the existence of the pictures. He did testify that in February 1964 Mrs. Shores had volunteered to lend him the money to make a down payment on an automobile and had asked for the return of the photographs in order to make copies of them. Character witnesses testified Peniston's reputation for truth and honesty was good and Mrs. Shores'

was bad. The trial court resolved these factual conflicts adversely to the defendant and found him guilty of extortion and attempted extortion.

Penal Code, section 518, provides "Extortion is the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . ." Section 519 provides "Fear, such as will constitute extortion, may be induced by a threat . . . To expose any secret affecting him. . . ." Peniston contends there was insufficient evidence to support a finding that he threatened to expose a secret.

In *People* v. *Lavine*, 115 Cal.App. 289, 295 [1 P.2d 496], the court said, ". . . the thing held secret must be unknown to the general public, or to some particular part thereof which might be interested in obtaining knowledge of the secret; the secret must concern some matter of fact, relating to things past, present or future; the secret must affect the threatened person in some way so far unfavorable to the reputation or to some other interest of the threatened person, that threatened exposure thereof would be likely to induce him through fear to pay out money or property for the purpose of avoiding the exposure."

Defendant argues that the photographs were only part of a number of pictures taken of Mrs. Shores at a semi-private modeling studio and circulated throughout the Pacific Coast, and that the husband and parents of Mrs. Shores knew of their existence. In reply, plaintiff pointed to the testimony of Mrs. Shores that at the time of the threat of exposure she was on probation from the prostitution charge and her parents had told her ". . . if anything else happened, no matter what, or if I got into any trouble or involved in any kind of mess or scandal or anything else, that they would personally bring me back down and turn me over to the court and see that I served my sentence, and they would also have my children taken from me." Her husband knew some pictures existed but did not know their nature, and neither her husband nor her mother was aware of her modeling activities. She had not wanted her husband or parents to see the nude pictures, and she had not known that pictures and movies of her had been exhibited in arcades in the San Fernando Valley. From this testimony the trier of fact could have reasonably inferred that Mrs. Shores feared that disclosure of the pictures to husband and parents might lead to revocation of probation and the loss of her children. This was sufficient evidence of a secret within the meaning of Penal Code, section 519.

Peniston contends that the testimony of Mrs. Shores was inherently improbable. He points to testimony that she had a poor reputation for truth and honesty and a poor moral character and argues that a desire for vengeance stemming from wounded pride must have motivated her accusations in this case. While this analysis may be correct, nevertheless, the issue before us is whether her testimony was inherently improbable. We do not find it so. The parties generally agree on the details of their relationship and differ only on the motivation of the money transaction—the one claiming extortion, the other claiming loan. The trier of fact heard both parties on the stand, observed their appearance, and deduced their respective credibility on matters at hand. It would be improper for us to substitute our views on credibility for those of the trial court and attempt to evaluate from a typewritten record the worth of witnesses we have neither seen nor heard. It is the trier of fact who must weigh the credibility of conflicting witnesses and decide which one to believe. In this case we find nothing inherently improbable in the testimony of either complainant or defendant (*People* v. *Carvalho,* 112 Cal.App.2d 482 [246 P.2d 950]), but merely a conflict of fact between the two, a conflict which the trial court resolved in favor of the complainant.

Peniston contends it was prejudicial error to refuse to admit into evidence motion pictures of Mrs. Shores, allegedly exhibited in arcades, in order to establish that the pictures used were not a secret to the general public. We think the trial judge correctly focused on the true issues in the case, whether Mrs. Shores' husband and parents knew about the pictures and whether the threat of disclosure to them put Mrs. Shores in fear.

Peniston also contends the count for attempted extortion should be reversed because there was no evidence that a threat of disclosure accompanied his demand for money. Two counts were charged, the first for extortion based on the payment of $400 in November 1963, and the second for attempted extortion based on the transaction in February 1964. The trial court found that the threat of disclosure in the first transaction carried over to the second one. Mrs. Shores testified that Peniston had said he would return the pictures for $1,000 and she had replied, "For that kind of money it would be just as cheap to tell my husband about it and my parents." Although there was no testimony of a direct threat in February, we think both parties understood the consequence of nonpayment

to be disclosure to husband and parents. The threat was reasonably inferable from the circumstances. (*People* v. *Oppenheimer,* 209 Cal.App.2d 413, 422 [26 Cal.Rptr. 18].)

Peniston argues, in the alternative, that because there was only one threat there was only one offense. We disagree. The two offenses were three months apart and constituted separate ventures in extortion.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.