273 P.3d 676

**STATE of Arizona, Appellee,**

v.

**Noe MENDOZA–TAPIA, Appellant.**

**No. 1 CA–CR 09–0809.**

Court of Appeals of Arizona,
Division 1, Department D.

April 3, 2012.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division and Craig W. Soland, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James L. Haas, Maricopa County Public Defender By Kathryn L. Petroff, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Noe Mendoza–Tapia appeals his convictions and sentences on one count each of kidnapping and theft by extortion, both class two felonies and dangerous offenses. He argues that the evidence was insufficient to prove the use of a deadly weapon or dangerous instrument in the theft by extortion, that the judge reversibly erred in refusing to order a retroactive competency hearing, and that the court miscalculated his presentence incarceration credit. For the reasons that follow, we affirm his convictions and sentences, but remand for recalculation of his presentence incarceration credit.

¶ 2 A grand jury indicted Mendoza–Tapia, Jhonnatan Ochoa–Suarez, and Eulalio Plascencia–Moreno each on one count of kidnapping and one count of theft by extortion, both class two felonies and dangerous offenses.[1] The judge severed Mendoza–Tapia's trial from the trial of Ochoa–Suarez and Plascencia–Moreno. The evidence introduced at Mendoza–Tapia's trial, viewed in the light most favorable to supporting his convictions,[2] was as follows. On the afternoon of October 15, 2007, Mendoza–Tapia forced the victim to lie face down in the backseat of the victim's vehicle by threatening him, first, with a knife, and then, with a gun. Another of the accomplices drove the vehicle to a vacant house in central Phoenix. The kidnappers blindfolded the victim, beat him, and tied him up.

¶ 3 The kidnappers then called the victim's wife and threatened to kill the victim if she did not pay them a ransom. The victim's wife testified: "They told me I had to get the money. If not, they were going to kill him. And the first thing that was going to—that I was going to find by the door of my house was going to be his head." The kidnapping victim testified that, when the kidnappers put him on the phone with his wife, he told her "[t]o do what she was told to do, because they were hitting me."

¶ 4 Police arrested Mendoza–Tapia and two others after observing them acting suspiciously in a parked vehicle near the place where police had arranged to drop off the ransom. Police found a loaded handgun under the passenger seat in which Mendoza–Tapia was seated, and another under the

---

1. The grand jury also indicted Mendoza–Tapia on one count of misconduct involving weapons, a charge to which he pled guilty before trial.

2. *State v. Moody*, 208 Ariz. 424, 435 n. 1, 94 P.3d 1119, 1130 n. 1 (2004).

driver's seat. Mendoza–Tapia directed police to the house where they found the victim alone, blindfolded, tied up, and beaten about the face. Mendoza–Tapia told police he had been hired to act as a lookout at the house where the victim was held, and to pick up the ransom, and that he had made three or four calls to the victim's wife directing her to the ransom site.

¶ 5 The jury convicted Mendoza–Tapia of kidnapping and theft by extortion, and found each to be a dangerous offense.[3] The jury found the existence of aggravating circumstances. The judge sentenced Mendoza–Tapia to an aggravated term of fifteen years on the kidnapping conviction, a class two dangerous felony, and an aggravated term of twelve years on the theft by extortion conviction, also a class two dangerous felony, both sentences to be served consecutively. Mendoza–Tapia timely appealed.

### Conviction for Theft, a Class Two Dangerous Felony

¶ 6 Mendoza–Tapia argues that the state offered insufficient evidence to convict him of a class two felony for theft by extortion, to find that it was a dangerous offense, and to prove the aggravating circumstance of "use of a gun or a deadly weapon" during this offense. He argues first that this court should apply the law of the case doctrine and find dispositive its 2009 decision that the same evidence offered at the trial of defendant Jhonnatan Ochoa–Suarez was insufficient to prove that the kidnappers threatened use of a deadly weapon or dangerous instrument in the ransom calls. *See State v. Ochoa–Suarez*, 1 CA–CR 08–0503, 2009 WL 2525274 (Ariz.App. Aug.18, 2009) (mem. decision).[4] He argues alternatively that if this court declines to apply the law of the case doctrine, it should nevertheless find that insufficient evidence supported the conviction,

sentencing enhancement, and aggravating circumstance.

¶ 7 We find the law of the case doctrine inapplicable, because this case involves a different defendant, a different judge, and a different trial. *See State v. Bocharski*, 218 Ariz. 476, 489, ¶ 60, 189 P.3d 403, 416 (2008) (noting that law of the case rule applies to rulings *"in the same case,* provided the facts and issues are substantially the same as those on which the first decision rested" (emphasis added)); *State v. Whelan*, 208 Ariz. 168, 171, ¶ 10, 91 P.3d 1011, 1014 (App.2004) (rejecting application of law of the case doctrine to two separate actions). Furthermore, the state conceded in *Ochoa–Suarez* that the evidence failed to support a conviction of theft by extortion. *Ochoa–Suarez*, 1 CA–CR 08–0503 at 3, ¶ 13. The state makes no such concession here.

¶ 8 We accordingly review de novo the sufficiency of the evidence to support the conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). In reviewing the sufficiency of evidence, we view the facts in the light most favorable to upholding the jury's verdict, and resolve all conflicts in the evidence against Mendoza–Tapia. *See State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted). "A conviction 'may rest solely on circumstantial proof,' but mere '[s]peculation concerning possibilities is an insufficient basis' to sustain a conviction." *State v. Garcia*, 227 Ariz. 377, 379, ¶ 9, 258 P.3d 195, 197 (App.2011) (citations omitted).

¶ 9 Theft by extortion is a class two felony if the defendant "knowingly obtain[s] or seek[s] to obtain property ... by means of a

---

3. The judge instructed the jury that to convict defendant of theft by extortion, the state could prove in pertinent part either that Mendoza–Tapia had threatened to cause physical injury, or that he had threatened to cause physical injury by means of a deadly weapon or dangerous instrument. The judge did not require the jury to designate on the verdict form which type of theft by extortion it found had been proven. The jury, however, found that this offense was a dangerous

offense. At sentencing, without discussion or objection, the judge entered judgment for theft by extortion, a class two felony, and dangerous offense.

4. A delayed appeal by the third defendant, Eulalio Plascencia–Moreno, raising the same issue, is currently pending before this court in 1 CA–CR 10–1036.

threat to ... [c]ause physical injury to anyone by means of a deadly weapon or dangerous instrument." A.R.S. § 13–1804(A)(1), (C) (Supp.2010).[5] Theft by extortion is a class four felony if the defendant seeks to obtain property by threatening to cause physical injury, but not by means of a deadly weapon or dangerous instrument. A.R.S. § 13–1804(A)(2), (C). A dangerous offense for sentencing enhancement purposes in pertinent part is one that involves "the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." A.R.S. §§ 13–105(13), –704 (2010).

■■■ ¶ 10 The class two felony offense thus requires proof that the defendant sought to obtain property by threatening to cause physical injury to the kidnapping victim by means of a deadly weapon or dangerous instrument. Garcia, 227 Ariz. at 379, ¶ 10, 258 P.3d at 197. Black's Law Dictionary defines "threat" as a "communicated intent to inflict harm or loss on another or on another's property" or an "indication of an approaching menace." Black's Law Dictionary 1519 (8th ed. 2004). Similarly, Webster's Dictionary defines "threat" as an "expression of an intention to inflict something harmful" or an "indication of impending danger or harm." Webster's II New College Dictionary 1149 (1995). Intention can "be expressed by words, gestures, or actions." State v. Flynt, 199 Ariz. 92, 94, ¶ 6, 13 P.3d 1209, 1211 (App.2000). "No precise words are necessary to convey a threat. Conduct takes its legal color and quality more or less from the circumstances surrounding it. All that is necessary is that the alleged threat be definite and understandable to the mind of ordinary intelligence." Bush v. State, 19 Ariz. 195, 200, 168 P. 508, 510 (1917) (implied threat to accuse victim's son of crime if victim did not transfer property was sufficient to support extortion conviction).

¶ 11 In Garcia, we held that, by itself, a threat to kill the victim was insufficient evidence to prove that the threat was to cause physical injury using a deadly weapon or dangerous instrument, and thus insufficient to support a conviction under section (A)(1).

See Garcia, 227 Ariz. at 381, ¶¶ 16–18, 258 P.3d at 199. In finding the evidence insufficient, we rejected the state's argument that "a jury should be permitted to assume that because the victim's life was threatened the use of a deadly weapon or dangerous instrument may be inferred." Id. at 380–81, ¶¶ 13–16, 258 P.3d at 198–99. Here, however, the circumstances surrounding the threats to kill the victim were not such that a jury would have to speculate about the use of a deadly weapon or dangerous instrument.

¶ 12 The evidence at trial showed that Mendoza–Tapia kidnapped the victim first using a knife and then a gun. The victim testified that Mendoza–Tapia forced him into the back of the vehicle at gunpoint, held him there at gunpoint, and told him "[n]ot to move, because, otherwise, he was going to kill [him]." Mendoza–Tapia moved to the backseat and began hitting the victim in the head with his gun and continued to threaten to kill him. At the stash house, the kidnappers would "rack the guns" in order to scare the victim, and he testified that he believed the kidnappers would kill him. With this foundation of fear in place, the kidnappers told the victim that they wanted money, and that if the ransom was not paid they would kill him and his son. The men told the victim's wife that if she did not get the money, the victim would be killed and his head would be found on her doorstep. As a result of the threats, beatings, and the use of the guns, the victim told his wife "to do what they were telling her to do."

■■■ ¶ 13 Based on this evidence, reasonable persons could conclude that the threats to kill the victim by shooting or by beheading, both necessarily involving the use of a deadly weapon or dangerous instrument, were intended to coerce the surrender of funds in ransom. It is beyond dispute that a gun was used to kidnap the victim and thereafter to periodically threaten, terrorize, and control him. Mendoza–Tapia admitted that he was armed when apprehended. It was not necessary for Mendoza–Tapia to have actually pointed the gun at the victim during

---

5. We cite to the current version of the statutes, as no material changes have been made to the sub-

sections at issue since the offense was committed.

the extortion call to establish the threat that he would shoot or kill him with a dangerous instrument. *See, e.g., State v. Stevens,* 184 Ariz. 411, 413, 909 P.2d 478, 480 (App.1995) (even absent overt threat, jury reasonably could conclude that defendant's "threatening behavior" was directed at coercing victim to surrender property); *see also People v. Oppenheimer,* 209 Cal.App.2d 413, 26 Cal.Rptr. 18, 25 (1962) (no particular words necessary to establish threat; threats can be made by innuendo in light of circumstances and relations between parties); *State v. Bright,* 129 Wash.2d 257, 916 P.2d 922, 926–30 (1996) (concluding that circumstances showed implied threat that deadly weapon would be used if rape victim resisted). The repeated threats to kill the victim were more effective because of the threatening exhibition of guns during the initial kidnapping.

¶ 14 Mendoza–Tapia argues that the evidence was insufficient because none of the calls to the victim's wife mentioned the use of any weapon or dangerous instrument. In *Garcia,* we mentioned in a footnote that the weapons used in that case were not known to the victim's sister or cousin, who were the subjects of the extortion. 227 Ariz. at 381 n. 5, ¶ 17, 258 P.3d at 199 n. 5. However, A.R.S. § 13–1804(A)(1) does not require that the threat to use a dangerous instrument or deadly weapon be communicated to the person from whom the property is demanded. *See State v. Roberts,* 131 Ariz. 519, 522, 642 P.2d 864, 867 (App.1981), approved in relevant part, 131 Ariz. 513, 642 P.2d 858 (1982). In *Roberts,* the defendant threatened the kidnapping victim with a gun if his family did not comply with the request for money. *Id.* Whether the family knew about the threat to use a gun was inconsequential.

¶ 15 On this record, we find the testimony was sufficient to prove beyond a reasonable doubt that Mendoza–Tapia threatened to use a dangerous instrument to cause physical injury to the victim. Therefore, we hold sufficient evidence existed to convict him of theft by extortion pursuant to A.R.S. § 13–1804(A)(1).

¶ 16 We further find for the foregoing reasons that the evidence did support the jury's finding that this offense was a "dangerous offense" for sentencing purposes. The sentencing enhancement is applicable in pertinent part only to offenses that involved the "discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." A.R.S. §§ 13–105(13), –704. The evidence showed that Mendoza–Tapia and accomplices exhibited and used a deadly weapon or dangerous instrument in seeking to extort the ransom from the victim's wife, and thus, supported the finding that this was a dangerous offense. We accordingly uphold the jury finding that the theft by extortion offense was a dangerous offense.

¶ 17 We further decline to vacate the jury's finding that the deadly weapon constituted an aggravating circumstance for purposes of the theft by extortion offense. The jury found that the "use, threatened use or possession of a deadly weapon ... specifically a handgun," during commission of the offense constituted an aggravating circumstance. The evidence supported a finding that Mendoza–Tapia and/or his accomplices possessed handguns when they committed the theft by extortion. The evidence accordingly supported the jury's finding that this aggravating circumstance existed. Mendoza–Tapia does not argue, and we therefore do not address, whether the trial court erred in considering the use of a deadly weapon as an aggravating factor because it was an essential element of the crime of theft by extortion as a class two felony. However, we note the jury also found the aggravating factor of the presence of an accomplice, an appropriate statutory aggravating circumstance that exposed Mendoza–Tapia to the maximum punishment. In Arizona, a single *Blakely*[6]-compliant aggravating factor establishes the facts legally essential to punishment. *State v. Brown,* 212 Ariz. 225, 231, ¶ 28, 129 P.3d 947, 953 (2006) (if jury finds one statutorily enumerated aggravating factor, defendant exposed to maximum punishment).

### Denial of Motion for Retroactive Competency Determination

¶ 18 Mendoza–Tapia next argues that the judge erred in failing to grant the request

**6.** *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

that he made more than a year after he was convicted to order a retroactive competency examination and hearing to determine whether he had been incompetent during trial. He argues that the judge should have ordered a retroactive Rule 11 hearing based on 1) the fact that a doctor found him incompetent two months after his conviction and it took eight months to restore him to competency, and 2) defense counsel's avowal that another medical doctor who had examined Mendoza–Tapia several months post-trial had "testified that [Mendoza–Tapia] had been incompetent prior to the start of trial."

¶ 19 The background on this issue is as follows. More than two months after his August 2008 conviction, Mendoza–Tapia's counsel filed a motion for a competency examination, noting that his client, "within the last seven days, for the first time brought up the issue of Rule 11 and indicated that he did not feel competent to go through the sentencing at this time." The judge granted the motion, vacated the sentencing date, and transferred the case to the Rule 11 court for further proceedings related to Mendoza–Tapia's competency.

¶ 20 In January 2009, five months post-trial, the Rule 11 court found Mendoza–Tapia incompetent based on the stipulated submission of three reports, two issued in November 2008 and one in January 2009, and the court ordered restoration proceedings. In May 2009, a final competency report was issued concluding that Mendoza–Tapia was competent to proceed to sentencing. In September 2009, following an evidentiary hearing, which was not made part of this record on appeal, the Rule 11 court found Mendoza–Tapia competent to proceed to sentencing. The trial judge set sentencing for October 21, 2009.

¶ 21 A day before sentencing, Mendoza–Tapia filed a Motion to Vacate Pursuant to Rule 24.2, or in the Alternative to Have the Defendant Examined for Competency During Trial. Defense counsel argued that the lengthy period it took to restore Mendoza–Tapia to competency "would indicate that he had been incompetent for some time prior to the initial finding of incompetency including the time he was in trial," and asked that the judge retroactively declare him incompetent for trial and vacate his convictions, or, alternatively, order that he be re-examined to determine whether he was incompetent during trial. At oral argument on the motion, defense counsel appeared to suggest that the doctor who had examined Mendoza–Tapia in January 2009 had indicated in her testimony at the evidentiary hearing that Mendoza–Tapia had been incompetent prior to trial. He told the judge that he had not yet had this doctor's testimony transcribed, but he believed the mere length of time it took to restore Mendoza–Tapia to competency "raises sufficient concern that he should be reexamined on the issue of competency at trial." The judge deferred ruling on the motion to allow her time to research the governing law, and set a status conference or possible sentencing for two days later, on October 23, 2009. The judge subsequently issued a minute entry in which she noted as a preliminary matter that, because Mendoza–Tapia had not yet been sentenced, his motion to vacate the judgment and sentence pursuant to Criminal Procedure Rule 24.2 was "not ripe for consideration." She nevertheless addressed the merits of his claim of incompetency during trial as follows:

> The Defense attorney argues that since the Defendant was found incompetent about two months after the trial ended and since it took several months to restore the Defendant to competency, he must have been incompetent during trial. The Defense attorney concedes he never raised any competency issue any time before trial and he never raised the issue during trial.
>
> However, this Court observed the Defendant during trial and noted the following: the Defendant appeared alert, attentive and expressive in his mannerisms. The Defendant was engaged with his defense as he had numerous conversations with his attorney during the trial and he appeared to be coherent. Further, the Defendant appeared to participate in his defense by discussing issues with his attorney and writing notes. Therefore, he appeared to have the ability to consult with his lawyer with a reasonable degree of rational understanding. This Court never observed any

confusion or disengagement from the Defendant's behavior during the trial. The Defendant always appeared to have a rational understanding as well as a factual understanding of the proceedings against him.

For the for[e]going reasons,

IT IS ORDERED denying the Defendant's Motion to vacate the judgment and sentence in this case.

¶ 22 We review a trial court's decision on whether to order an examination and competency hearing for abuse of discretion. *State v. Amaya–Ruiz*, 166 Ariz. 152, 162, 800 P.2d 1260, 1270 (1990). When a court fails to expressly rule on a motion, we deem it denied. *State v. Hill*, 174 Ariz. 313, 323, 848 P.2d 1375, 1385 (1993). Due process requires that the state "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). A trial judge is under a continuing duty to inquire into a defendant's competency. *Bishop v. Superior Court*, 150 Ariz. 404, 407, 724 P.2d 23, 26 (1986). The test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

¶ 23 Under the Arizona rules governing competency determinations, a defendant has a right to a mental examination and hearing on his competency to stand trial when "reasonable grounds for an examination exist." *See* Ariz. R.Crim. P. 11.3(a). Reasonable grounds exist when "there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceeding against him and to assist in his defense." *Amaya–Ruiz*, 166 Ariz. at 162, 800 P.2d at 1270 (citation omitted). In determining whether reasonable grounds exist, the trial court may rely on its own observations. *Moody*, 208 Ariz. at 443, ¶ 48, 94 P.3d at 1138.

¶ 24 We find no abuse of discretion in the judge's rejection of a Rule 11 hearing to retroactively determine whether Mendoza–Tapia was incompetent during trial, because Mendoza–Tapia did not offer any "reasonable grounds" to doubt his competency during trial. The judge had the opportunity to observe Mendoza–Tapia during trial, and noted in her findings that he appeared to be fully engaged in his defense, did not appear either confused or disengaged, and appeared rational. Defense counsel never raised any competency issue before or during trial. Mendoza–Tapia's argument on appeal relies in large part on sheer speculation that his decision at trial that he was not "mentally or emotionally ready to testify" might in hindsight have indicated incompetency, and that the length of time it took to restore Mendoza–Tapia to competency after trial suggested that he had been incompetent months before, during trial. We cannot say the judge abused her discretion in finding that this type of speculation did not constitute "reasonable grounds" to doubt his competency during trial. *Cf. State v. Romero*, 130 Ariz. 142, 146–47, 634 P.2d 954, 958–59 (1981) (holding no abuse of discretion in refusing to order competency examination based on opinions that appellant had "severe mental problems").

¶ 25 Nor are we persuaded by Mendoza–Tapia's additional argument that reasonable grounds existed to conduct a retroactive Rule 11 hearing because one of the examining doctors had recently "testified that [Mendoza–Tapia] had been incompetent prior to the start of trial." Defense counsel's avowal that this doctor had so testified was ambiguous at best. In response to the judge's inquiry as to why defense counsel had not asked the examining doctors directly how long Mendoza–Tapia had been incompetent, defense counsel said that at the most recent Rule 11 hearing, he had asked the doctor who had examined him five months after trial "whether he was incompetent weeks prior to that, and she indicated that he was." In response to the judge's attempt to clarify whether this doctor had indicated "that he was competent [sic] during trial," defense counsel said, "Incompetent prior to

that time, yes." Mendoza–Tapia did not make this avowal in his written motion, and did not confirm it by presenting the trial court or this court with a transcript of the evidentiary hearing at which this doctor testified. Under these circumstances, we decline to find the judge abused her discretion in denying his motion for a Rule 11 hearing.

### Presentence Incarceration Credit

¶ 26 Finally, Mendoza–Tapia argues that the trial court erroneously failed to credit him with twenty-four days of presentence incarceration, in addition to the 713 days he was awarded. Because both parties indicate the record may not be entirely clear on this issue, we leave the issue of the discrepancy in presentence incarceration credit to the trial court.

### Conclusion

¶ 27 For the foregoing reasons, we affirm Mendoza–Tapia's convictions and sentences, but remand for recalculation of his presentence incarceration credit.

CONCURRING: MAURICE PORTLEY, Judge and JOHN C. GEMMILL, Judge.