[Crim. No. 419. Fourth Appellate District.—July 26, 1937.]

THE PEOPLE, Respondent, v. H. T. TURNER, Appellant.

S. P. Williams for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The appellant and his wife, Lovie Turner, were jointly charged with the crime of extortion and jointly tried. A jury acquitted the wife and convicted the husband, who has appealed from the judgment and from an order denying his motion for a new trial. The only point raised is that the evidence is not sufficient to sustain the judgment.

There is evidence of the following facts: On the evening of February 23, 1937, Elmer Johnson, the complaining witness, returned to his home where he lived alone and about 7 o'clock Lovic Turner came to his house. On the same evening the appellant and three other men came to Johnson's house, arriving there between 7:30 and 8 o'clock. The appellant kept out of sight while the other men went to the house and borrowed Johnson's shotgun, saying they wanted to shoot some ducks. A few minutes later Johnson saw the appellant, whom he had never seen before, looking in at a window. The appellant said to Johnson: "Sit easy, the guns are on you and the house surrounded with men" and then remarked that he wanted to come in. The appellant entered the house, told Johnson not to move, and said: "If you do you will get killed with your own gun. The guns are on you from the outside. Now you are going to jail". After telling Johnson that three guns were on him from the outside the appellant pulled out his knife, opened it, whetted it on his hand, threatened to cut his wife's throat and told Johnson that he wanted $41. Johnson said he did not have that amount with him but that he could get it by the next night. The appellant then told him to have that amount at the postoffice in Calipatria by 7:30 on the next night, and then said: "Be there. If you ever tell this I will kill you if I have to lay on the ditch bank for a year to do it". After further conversation Johnson left to do some irrigating for his employer, leaving the husband and wife in the house. Shortly thereafter the three men who had said they were go-

ing duck hunting returned to the house and then left the place, the appellant and his wife going with them. The following evening Johnson met the appellant and Lovie Turner at the postoffice in Calipatria and Johnson indorsed his pay-check in the sum of $21 and, at appellant's direction, gave the check to Lovie Turner. She indorsed the check in Johnson's presence and appellant told her to cash it at a near by drug store. She tried this without success. Johnson testified that he gave this $21 check to the appellant because he was afraid of his life. Johnson agreed to meet the appellant at the same place on the next night and to bring the other $20. Before that time the appellant and his wife were arrested, Johnson having reported the matter to the officers. On the morning of February 25th, the appellant and his wife cashed the $21 check in a store at Calipatria, receiving some groceries and the balance in cash.

It is appellant's contention that it may be inferred from other evidence that Lovie Turner had deserted him and was living with the prosecuting witness; that he went to Johnson's home and surprised them together; that it was amicably agreed between them that Lovie Turner would go back to Arkansas, obtain a divorce and return and marry Johnson; that Johnson agreed to furnish $41 to pay for her transportation; and that Johnson delivered the check in part performance of this agreement. It is further argued that the check was turned over merely to "get something" on the husband and that the appellant was the victim of a chain of circumstances which were largely created by the prosecuting witness in order to entrap him so that he would be arrested and eliminated from the scene, in order that the relations between the prosecuting witness and the wife could continue. Specifically, it is argued that no threats to kill Johnson were made at his home on the evening of February 23d, that the fact that he did not turn over his pay-check on that occasion shows that he was then under no fear whatever, that no threats were made and he was under no fear at the meeting the next night when the check was delivered, and that, therefore, it conclusively appears that an unlawful use of force and fear was not the operating or controlling cause of his delivering the check, within the meaning of the statute as interpreted in *People* v. *Williams,* 127 Cal. 212 [59 Pac. 581].

The court instructed the jury that in order to constitute extortion the wrongful use of fear must be the operating cause which produced the consent and that it should acquit the appellant if it found from the evidence that some other cause was the primary and controlling one inducing the consent of Johnson in delivering the check in question. Assuming that other evidence in the record would have justified a contrary conclusion there was evidence justifying the inference that the check was delivered because of force and threats used, and that force and fear was the operating or controlling cause of Johnson's consent to deliver the check. Irrespective of Johnson's motive in finally reporting the matter to the officers, the original scheme was not created by the prosecuting witness to entrap the appellant. The evidence justifies the inference that the appellant used the excuse of a duck hunting expedition, real or pretended, to make sure that Johnson would be unarmed. His subsequent actions on the evening of February 23d constituted a sufficient use of force, threats and fear. The fact that the check was not actually delivered until the next night and that no further threats were voiced on that occasion is far from sufficient to conclusively show that the check was voluntarily delivered, especially in the face of Johnson's testimony that he then delivered the check because he was afraid of his life. ■ The jury was also entitled to take into consideration the fact that the appellant did not take the stand to deny or explain his conduct. (Article I, sec. 13 of the Constitution.) The evidence, although conflicting, sustains the judgment.

The judgment and order are affirmed.

Marks, J., and Jennings, J., concurred.