[Crim. Nos. 6079, 6080. Second Dist., Div. Three. Mar. 31, 1958.]

### THE PEOPLE, Respondent, v. MORRIS HARRIS GOODMAN, Appellant.

[Two Cases.]

Claude Vibart Worrell for Appellant.

Edmund G. Brown, Attorney General, Norman H. Sokolow and John A. Vander Lans, Deputy Attorneys General, for Respondent.

VALLÉE, J.—Appeals in two cases, numbers 6079 and 6080. In number 6079 defendant was charged by information in Count I with grand theft[1] in that he took personal property of Maurice Bailey valued at more than $200, in Count II with attempted extortion[2] in that he attempted by wrongful use of force and fear to obtain $5,000 from Maurice Bailey by posing as a law enforcement officer and without legal justification accusing Bailey of a crime and threatening to arrest him unless $5,000 was given him, and in Count III with burglary[3] in that he entered the apartment occupied by Bailey with the intent to commit theft. It was alleged the offenses were committed on January 27, 1957. It was further alleged that on April 6, 1955, defendant was convicted in the superior court for the county of Los Angeles of violating section 337a of the Penal Code.

In number 6080 defendant in 1955 pleaded guilty to a violation of section 337a, proceedings were suspended, and he was granted probation for three years.

In number 6079 defendant admitted the prior conviction. The cause was tried before a jury. Defendant was found guilty on all counts, and as to Count III the jury found the offense to be burglary of the first degree. On conviction in the present action the order granting probation in the 1955 action for violation of section 337a was revoked and defendant

---

[1]Pen. Code, § 487, subd. 1.
[2]Pen. Code, § 524.
[3]Pen. Code, § 459.

was sentenced to state prison for that offense. In number 6079 judgment was pronounced and defendant sentenced to state prison, the sentences as to Counts I and II to run consecutively, the sentence as to Count III to run concurrently with the sentences as to Counts I and II, and the sentences as to Counts I, II, and III to run consecutively to the sentence in number 6080. Defendant appealed from the judgments and orders denying a new trial in both actions.

The specifications of error in number 6079 are: 1. The evidence is insufficient to support the verdicts. 2. The court erred in admitting a purse and its contents in evidence. 3. The court erred in admitting evidence of a telephone conversation. 4. The court erred in refusing to instruct the jury with respect to the burglary count.

On January 27, 1957, Maurice Bailey, a furniture designer, lived at 968 North La Cienega, Los Angeles. Arminio Lozzi, who worked for Bailey, was in Bailey's home working. Bailey used the lower part of the building as an exhibition place for his work and lived in the upper part. He was working on a model of an office building. About 3 o'clock in the afternoon Ev and Marilyn Jackson, husband and wife, arrived at the house. Lloyd Crane arrived shortly thereafter. Bailey had met the Jacksons through Crane about six weeks earlier.

Shortly after the Jacksons arrived Ev made a phone call, then left for about two and a half hours, returning about 5:30 or 6 p. m. About 7:30 p. m. Bailey was in the hallway when he first noticed that three unknown and uninvited men, one of whom was defendant, were in the house. One of the three unidentified men had a badge in his hand and a gun in a holster on his hip. The third man had a pair of handcuffs in his hand. The man with the badge showed it to Crane and stated he was a policeman. The badge had the word "Patrolman" on it. Defendant told Bailey he was the sergeant in charge and he was there on a marijuana "rap." In the meantime defendant told the other two men to "shake" the apartment down. Lozzi and Crane were ordered to empty the contents of their wallets, which they did. One of the men told Bailey, Lozzi, and Crane to go into the bedroom. When they entered the bedroom Marilyn was lying upon the bed nude. Bailey, Lozzi, and Crane were each forced to be photographed with Marilyn. Crane at first refused to sit upon the bed with Marilyn and was struck on the jaw by defendant.

After Bailey had been photographed with Marilyn defendant told him to go to the kitchen, that he had a very young

girl in there in a very compromising position, and "it was going to really be rough," if he took Bailey in and booked him it would take $50,000 bail to get him out, and it would cost Bailey at least $5,000. Bailey said he did not have that amount of money. Defendant said "How much can you raise tonight?" Bailey said he could not raise anything, that possibly in the morning he could raise part of it. Defendant asked Bailey if he had a checking account; Bailey said he did; defendant asked where the checks were; Bailey told him they were downstairs in the studio. Defendant told Bailey he would have to clear the matter through his superiors; he would have to split, so a small amount would not do any good because he would not get all of it. Defendant and Bailey went downstairs where defendant told him to write five checks for $1,000 each payable to cash. Bailey wrote the checks. He did not have that much money in his checking account. He told defendant he possibly had $700 to $900 in the account and that the checks would be worthless. Defendant asked Bailey if he could raise some money the next day to cover the checks. Bailey said he probably could get part of it. Defendant told him he would give him until 11 o'clock the next morning to raise the money and make the checks good. Defendant told Bailey the two men upstairs were not to be told of the transaction. Bailey handed defendant the five checks and asked him what his name was. Defendant said, "When I call you, I'll—it will be George." Bailey gave defendant the number of his private, unlisted telephone.

Defendant and Bailey went back upstairs. Defendant said to the two unidentified men, "We have got enough. Come on." One of them said, "Well, I'm still looking," to which defendant replied, "Never mind, come on, we have got enough." Defendant, the two unidentified men, and Ev and Marilyn Jackson left the place together. At defendant's direction one of the men took Bailey's motion picture camera, lens, case, and some film, all of a value in excess of $200, with him.

The next day Bailey contacted the police. He returned to his apartment at 5 p. m. accompanied by two police officers. Shortly after his return his private phone rang. He picked up the receiver, as did one of the officers on an extension. Defendant, who was calling, said, "This is George," and asked Bailey where he was at 11 o'clock that morning. Bailey said he had been out all day trying to raise the money; he had raised $3,500; and asked if defendant had his camera. Defendant said when Bailey raised the difference between $3,500

and $5,000 he could get the camera, said he would call back, and hung up. Some time later defendant called Bailey and said, "This is George again." The officer was on the extension. Defendant told Bailey to meet him in five minutes, to walk up to a bowling alley a block away, to walk back to the rear to the telephone booths, to walk into the rear booth, wait until he arrived, and bring the money with him. Bailey went to the bowling alley. An officer had preceded him and had placed defendant under arrest.

One of the officers took a key to room 9 in a motel from defendant's pocket. A few days before January 27 defendant had gone to the motel with a woman, had registered as John and Mary Wayne, and had paid the rent for room 9. Ev and Marilyn Jackson occupied room 9 on the 27th.

The argument with respect to the contention that the evidence is insufficient to support the verdicts is that the testimony of Bailey and Crane is inherently improbable, confusing, and inconsistent; that Bailey's hands are not clean since "he admitted prior contributions to 'Marilyn's' delinquency"; Ev and Marilyn were not produced as witnesses; neither the checkbook nor the check stubs were produced; no stolen property was introduced in evidence; and no unlawful entry was proved. These were all matters for the consideration of the jury, not this court. The test on review is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt has been established beyond a reasonable doubt. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]; *People* v. *Cahan,* 141 Cal. App.2d 891, 897 [297 P.2d 715].) Manifestly there was substantial evidence to support the conclusions of the jury with respect to the three offenses charged. (*People* v. *Case,* 49 Cal.2d 24, 26-28 [313 P.2d 840]; *People* v. *Jones,* 25 Cal.App.2d 517, 519-522 [77 P.2d 897]; *People* v. *De Nava,* 119 Cal.App.2d 82, 83-84 [258 P.2d 1073].)

It is argued the entry was before sundown and consequently the burglary was of the second, and not of the first, degree. The point is without merit. The entry was on January 27. Bailey testified it was about 7:30 p. m. when the three men entered the apartment and that it was dark. Further, there was evidence that one of defendant's associates was armed and that defendant struck Crane on the jaw. Every burglary committed in the daytime or nighttime by a person armed with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first

degree. (Pen. Code, § 460.) The evidence supports the finding that the burglary was of the first degree.

 Defendant asserts the three offenses charged constitute a single individual act and that the conviction of one offense only may be sustained. Section 654 of the Penal Code provides:

"An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

The rules applicable to the determination of the question are stated in the recent case of *People* v. *Brown,* 49 Cal.2d 577, in which the court stated (pp. 591-592) [320 P.2d 5]:

"Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654. Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts. . . . 'If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been committed so that more than one statute has been violated. If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. . . .

"[P. 593.] [S]ection 654 comes into application where a defendant by one act commits more than one offense."

In *People* v. *Guarino,* 132 Cal.App.2d 554 [282 P.2d 538], the defendant was convicted of grand theft and burglary. He had entered a store and therein had taken a large amount of jewelry. It was contended the theft was not a separate offense from the burglary. This court held the point to be without merit, saying (p. 559):

"The crime of burglary is complete on the entering of the building with intent to commit a felony, though the intended felony be not committed. Larceny is a separate act and involves the unlawful asportation of the personal property of another, with intent to deprive him thereof; and if a larceny

is actually perpetrated after the burglarious entry a second crime is committed."

Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right. (Pen. Code, § 518.) Fear, such as will constitute extortion, may be induced by a threat either to do an unlawful injury to the person of the individual threatened, or to accuse him of any crime, or to expose or to impute to him any disgrace or crime. (Pen. Code, § 519.) Every person who attempts, by means of any threat, such as is specified in section 519, to extort money or other property from another is guilty of a public offense. (Pen. Code, § 524.)

Extortion and theft are not the same offense. ▇ To constitute extortion the victim must consent, albeit it is a coerced and unwilling consent, to surrender of his property; the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist. (21 Cal.Jur.2d 595, §§ 4, 8.)

▇ There are two elements to the crime of attempted extortion—specific intent to commit the crime, and a direct ineffectual act toward its commission. (*People* v. *Franquelin*, 109 Cal.App.2d 777, 783 [241 P.2d 651].) ▇ Ordinarily theft is the felonious taking of the property of another without his consent with intent to deprive him thereof. (Pen. Code, § 484; *People* v. *Cannon*, 77 Cal.App.2d 678, 692 [176 P.2d 409].) In this state theft includes larceny, embezzlement, obtaining money by false pretenses and kindred offenses, but the elements of the offenses have not been changed. (Pen. Code, §§ 484, 490a; *People* v. *Jones*, 36 Cal.2d 373, 376-377 [224 P.2d 353].) In the present case the theft was larceny.

▇ The course of conduct shown by the evidence violated more than one statute. Defendant entered Bailey's home with intent to commit a felony. The offense of burglary was complete when he entered. It was punishable under sections 459 and 461 of the Penal Code. After entering Bailey's home defendant feloniously stole and carried away the camera and its accessories with intent to deprive Bailey thereof. This offense of grand theft comprised a divisible transaction punishable under section 487 of the Penal Code. Separately from the burglary and the grand theft, defendant committed the divisible offense of attempted extortion. Defendant did not by one act commit more than one offense. He committed separate

and distinct acts and each act was established as the basis of each conviction.

We hold that each offense of which defendant was convicted was separate and distinct from each of the others.

■ After placing defendant under arrest and taking the key to room 9 of the motel from his pocket, the officers went to the motel and had a conversation with the manager. They then entered room 9 and searched it. They found a lady's purse on the floor, which they took with them when they left. The purse and its contents were admitted in evidence over defendant's objection. He asserts error. He says the motel was a long way from the place where the arrest was made, which it was, and that the search cannot be predicated on the arrest. Assuming, without deciding, that the court erred, we think defendant was not prejudiced and that no miscarriage of justice resulted. Defendant does not say how he was prejudiced. In view of defendant's admission that Marilyn Jackson was in room 9 on January 27 it is not reasonably probable that a result more favorable to him would have been reached in the absence of the error, if there was error. (*People v. Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

■ The court, over defendant's objection, permitted the officer who listened on the telephone extension in Bailey's home to testify to the conversations between defendant and Bailey. Defendant claims the testimony was hearsay and inadmissible. Bailey testified the telephone conversations to which the officer listened were with defendant. The officer testified defendant's voice was similar to the one he heard on the telephone. ■ When the identity of the party against whom a telephone conversation is sought to be admitted has been established by some evidence, either direct or circumstantial, the conversation may be shown in the same manner, and with like effect, as conversations had between individuals face to face. (*People v. Lorraine*, 28 Cal.App.2d 50, 54 [81 P.2d 1004].) ■ The telephone conversations between defendant and Bailey were not hearsay. An extrajudicial declaration or admission of an accused may be proved against him to show his guilt. Such a declaration or admission is not hearsay. (19 Cal.Jur.2d 133, § 397.)

■ After the People rested defendant requested the court to direct a verdict in his favor on the burglary count. The court stated that in its opinion there was sufficient evidence of burglary to allow the matter to go to the jury and declined to give the instruction. Defendant claims error. There was no error. As stated earlier, there was substantial evi-

dence of the commission of burglary. (*People* v. *De Nava,* 119 Cal.App.2d 82 [258 P.2d 1073].)

Defendant does not press the appeal from the judgment rendered on the violation of section 337a of the Penal Code. The judgments and orders appealed from are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.